ESTATE OF HARRY A. McCORMICK ET AL., Appellants, *v.* REGISTRAR OF PROPERTY OF HUMACAO, Respondent.

No. 754. Submitted March 27, 1929.—Decided April 23, 1929.

*H. Torres Solá* for the appellants.

MR. JUSTICE TEXIDOR delivered the opinion of the court.

Enrique A. McCormick died in San Juan, P. R., leaving an open will in which he named voluntary heirs, he having no forced heirs, and made several legacies. In the will he appointed as executors his wife, Dolores Alcaide y Baiz, and Carlos J. Torres, conferring upon them ample powers of administration and for conveying and incumbering the hereditary property.

The executors, in representation of the estate of Harry A. McCormick y Hartman, and the widow, Dolores Alcaide y Baiz, as sharer in the conjugal partnership property and the usufructuary quota, sold to José L. Berríos by a deed of May 18, 1928, ratified by another of August 13, 1928, several rural properties in the district of Yabucoa, a part of the deferred purchase price being represented by two promissory notes secured by a mortgage on one of the properties sold. These documents were presented for record in the registry of property of Humacao, being accompanied by an authentic copy of the will, the testamentary letters and the recording fees. The registrar recorded them in part and refused to record a property of 195 acres in Guayabota ward of Yabucoa, another of 44 acres in the same ward and a condominium in another of 112 acres in the same ward because it was not shown that The People of Porto Rico had been paid the inheritance tax or that there was an exemption. As regards the other three properties he noted the same defect and also that they were not recorded in favor of the grantor or of any other person. This note was written at the foot of the will of McCormick. As regards the deeds of May 18 and August 3, 1928, the registrar recorded the purchase and sale with respect to the community interest of Dolores Alcaide y Baiz in the property of 195 acres and refused to record the remainder of that property and the other three, including the usufruct of the widow, because the properties were not recorded in favor of the widow and the estate of Harry A. McCormick, or of any other person. As to the mortgage for the deferred payments, a similar decision was made and its record was denied.

This is an appeal from those decisions of February 20, 1929, but not from the refusal to record the other properties and the condominium not found recorded in favor of the grantor and only as regards the property of 195 acres sold to Berríos.

In accordance with the jurisprudence of this court in

*Successors of L. Villamil & Co.* v. *Registrar*, 16 P.R.R. 721, and *Vilella* v. *Registrar*, 36 P.R.R. 714, there is no doubt that when the executors have the extraordinary powers to sell real property it is not necessary that the voluntary heirs intervene in the sale. In the last of those cases the court considered the juridical aspect of the office of executor and the much debated question of whether the executor is an agent of the testator or of the heirs, citing the opinion of Manresa that the executor represents the personality of the testator. The undersigned Associate Justice is of the opinion that the executor represents the personality of the testator; but as to the extent of his powers and the limits of that representation, he doubts seriously whether they can be extended beyond the requirements of an office having the essential characteristics of being purely testamentary and therefore whether or not it is necessary to distinguish between the functions and the testamentary acts and those which are not. But this is a matter which at present does not affect the decision, and this digression is authorized only by a desire to save a legal opinion.

The appellants state the problem in terms more or less as follows: The executors being empowered to alienate, the acts or contracts executed for this purpose are conveyances made by the testator and therefore are not subject to the inheritance tax.

We hold that whatever may be the powers of the executors they can not be exercised until after the occurrence of the death of the testator, which gives them the character of executors, and during the existence of a will which goes into effect only upon the death of the testator, both as regards the heirs and legacies and the appointment of executors and accountants. When the testator dies and the designated heirs express their acceptance the inheritance appears in an undivided condition, which does not mean that it is not an inheritance, and that does not prejudice the rights and interests of the heirs in the estate. The old Spanish juris-

prudence held that the testamentary provisions become fully effective upon the death of the testator and from that time the ownership passes to the heirs or legatees entitled thereto. (Judgment of the Supreme Court of Spain of November 20, 1878.) In the judgment of the same court of February 28, 1879, it was likewise held that the ownership in the undivided inheritance belongs to the co-heirs in common. Section 657 of the Spanish Civil Code (which is the same as section 665 of our Code) provides that the rights to the succession of a person are transmitted from the moment of his death. That is the doctrine laid down by the Supreme Court of Spain in its judgments of March 8, 1899, and March 20, 1916. And that is the doctrine recognized and upheld by the Supreme Court of Porto Rico in *Velilla* v. *Piza et al.*, 17 P.R.R. 1069. In the subjective aspect of inheritance both the law and its authentic construction recognize the rule that the character of heir is born with the death of the testator. In the objective aspect the inheritance, as an aggregate of property, rights and obligations, comes into being at that moment. When the testator dies his spiritual and material action as regards rights, obligations and property ceases; but the inheritance is there as a universality waiting only for the moment when by acceptance first and partition later the property, rights and obligations are distributed among individuals. That is why the executor acts within the concept of inheritance and not absolutely as if the testator were alive, for in that case the executor would not be such even in name.

If the executor sells property it is unquestionable that the exchange of values essential to the sale will not redound to the benefit of the deceased testator, but to the benefit of the estate which receives the proceeds of the sale for the benefit of the heirs who only thus can participate in it. And if the proceeds go into the estate as an equivalent of the property sold, it is a part of the inheritance and liable as such. Otherwise it would be easy to elude payment of the inheritance tax by having the property sold by the executor and maintaining

the theory that the testator had made the sale; although forgetting that the proceeds of the sale remain.

Section 379 of the Political Code forbids notaries to issue, authorize or certify any instrument of award, partition, distribution, alienation or hypothecation of property unless the inheritance tax receipt is presented. The same restriction is likewise established in that section as regards registrars. In the present case the registrar holds that such payment is not shown and finds himself compelled to deny the record, in which he is perfectly justified.

The rulings appealed from are affirmed.

Mr. Chief Justice del Toro took no part in the decision of this case.